UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | CV 08-7568-CAS (AGRx) | Date | June 22, 2015 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. $743,856.34 IN BANK FUNDS | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Victor Rodgers, AUSA | Mark Hathaway | |

**Proceedings:** PLAINTIFF'S MOTION TO STRIKE CLAIMS AND ANSWERS, AND ENTER DEFAULT JUDGMENT (Dkt. No. 116, filed May 22, 2015)

I. INTRODUCTION

On November 17, 2008, plaintiff United States of America ("plaintiff" or "the government") initiated this action by filing a civil forfeiture action against defendant $743,856.04 in bank funds. Dkt. No. 1. The operative First Amended Complaint ("FAC") was filed on December 3, 2008. Dkt. No. 3. The government alleges that these bank funds are connected to mail fraud, wire fraud, or bank fraud. See generally id. At issue in this order is the claim to some of these funds filed by Patricia Clark. On May 22, 2015, the government filed a motion to strike her claim and answer, and enter a default judgment as to the funds she had claimed.[1] Dkt. No. 116. Claimant filed an opposition to that motion on June 2, 2015, Dkt. No. 120, and the government replied on June 8, 2015, Dkt. No. 121. On June 22, 2015, the Court held a hearing at which counsel for the parties appeared. For the foregoing reasons, the government's motion is denied.

---

[1]The government initially sought the same sanctions against Kimberly Clark, another claimant. On June 1, 2015, however, Kimberly Clark entered into a consent judgment. Dkt. No. 119. As the government recognizes, the instant motion is accordingly moot insofar as it concerns Kimberly Clark. Dkt. No. 121 at 1. The third claimant to have appeared in this action, Antoine Beard, entered into a consent judgment on March 6, 2015. Dkt. No. 107. The government represents that if the instant motion is resolved in its favor, it will move for a default judgment as to the remaining funds, which if granted would resolve this case. Dkt. No. 116 at 3–4 & n.4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | CV 08-7568-CAS (AGRx) | Date | June 22, 2015 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. $743,856.34 IN BANK FUNDS | | |

## II. BACKGROUND

### A. Factual Background

The government alleges that the defendant funds were involved in a fraudulent scheme to obtain money held by Bank of America and Washington Mutual, two federally insured banks. FAC ¶ 8. In this alleged scheme, Kristin Clark—a real estate agent who owned two real estate investment companies—would enlist the assistance of Bradley Bishop, a loan officer who worked at various times for both banks, to recruit buyers for homes in Colorado. Id. ¶ 9. Kristin Clark would use information about these buyers to submit loan applications listing false employers, misstated income or assets, and untrue representations that the borrowers would reside on the subject property. Id. Significant proceeds from these loans were transferred to accounts in the names of Patricia Clark (Kristin Clark's mother), Kimberly Clark (Kristin Clark's sister), and Antoine Beard (Kristin Clark's boyfriend). Id. The banks also made commission payments to Patricia Clark's investment companies. Id.

On June 3 and 4, 2008, the government seized $743,856.34 in funds from several bank accounts in the names of persons and entities listed in the preceding paragraph, including Patricia Clark. See id. ¶ 5. The government contends that these funds are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984 because the funds represent traceable proceeds of violations of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), or 1344 (bank fraud); and 18 U.S.C. §§ 981(a)(1)(A) and 984 because the funds were involved in violations of 18 U.S.C. §§ 1956 (money laundering transactions) or 1957 (transactions in criminally derived property exceeding $10,000). Dkt. No. 116 at 1; see FAC ¶¶ 26–31.

Patricia Clark contends that $178,518 of the seized funds were lawfully earned by her husband in his job as an engineer at Lockheed Martin, and loaned to the couple's daughter, Kristin Clark. Dkt. No. 120 at 4.

### B. Procedural Background

As stated, the government filed this forfeiture action on November 17, 2008, and its FAC on December 3, 2008. Dkt. Nos. 1, 3. On November 25, 2008, plaintiff posted a Notice of Civil Forfeiture on a government website as required by Rule G(4)(a)(iv)(C) of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | CV 08-7568-CAS (AGRx) | Date | June 22, 2015 |
| Title | UNITED STATES OF AMERICA v. $743,856.34 IN BANK FUNDS | | |

the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"). Dkt. No. 4. The government has represented that this notice, which listed the seized amounts and subject bank accounts, was posted on that website "for at least 18 hours a day for the required 30 days." Id. at 1. The notice directed that "[a]ny person claiming a legal interest in the Defendant Property must file a verified Claim with the court within 60 days from the first day of publication (November 25, 2008) of this Notice . . . and an Answer to the complaint under Rule 12 of the Federal Rules of Civil Procedure within 20 days thereafter." Id. at 3.

On January 8, 2009, Patricia Clark filed a claim for $292,680.33 of the defendant funds, representing the entirety of the seized funds in a Wells Fargo Bank account in her name. Dkt. No. 7; see FAC ¶ 5(f). On February 9, 2009, Patricia Clark filed an answer to the FAC and demanded a jury trial. Dkt. No. 18.[2]

On March 27, 2009, the government filed a motion to stay the forfeiture proceeding pursuant to 18 U.S.C. § 981(g) pending resolution of the FBI's related criminal investigation, arguing that discovery in the civil matter could adversely affect the criminal investigation. Dkt. No. 29. Patricia and Kimberly Clark opposed that motion. Dkt. No. 35. On April 17, 2009, the Court granted the government's motion, staying this action and ordering the government to file status reports every ninety days concerning the status of the criminal investigation. Dkt. No. 39.

On October 2, 2014, the government filed a request to lift the stay in this action, representing that the criminal cases brought in this district against several persons (not including Patricia Clark) had been substantially concluded.[3] Dkt. No. 93. The Court lifted the stay on October 3, 2014. Dkt. No. 94. On December 8, 2014, the Court issued a scheduling order setting the following dates:

---

[2]On February 10, 2009, this case was transferred from the Honorable John F. Walter to the undersigned judicial officer. Dkt. No. 22.

[3]See United States v. Peter Vincent Capra (12-CR-00178-RBJ); United States v. Kristin A. Clark (08-CR-01296-CAS); United States v. Benjamin Serrano (09-CR-1202-CAS); United States v. Bradley S. Bishop (09-CR-00637-CAS).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**　　'O'

| Case No. | CV 08-7568-CAS (AGRx) | Date | June 22, 2015 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. $743,856.34 IN BANK FUNDS | | |

> Request for leave to file amended pleadings or to add parties: February 27, 2015;
> Factual Discovery Cut-off: August 10, 2015;
> Last Day to File Motions: August 28, 2015;
> Exchange of Expert Reports Cut-off: August 24, 2015;
> Exchange of Rebuttal Reports Cut-off: September 8, 2015;
> Expert Discovery Cut-off: September 21, 2015;
> Status Conference re: Settlement (**11:00 A.M.**): **November 9, 2015**;
> Pretrial Conference/Hearing on Motions in Limine (**11:00 A.M.**): **November 23, 2015**;
> and Jury Trial (**9:30 A.M.**): **December 8, 2015.**

Dkt. No. 100 (emphasis in original).

     Also on December 8, 2014, the government served Patricia Clark with special interrogatories pursuant to Supplemental Rule G(6), as well as standard interrogatories and requests for production of documents. Dkt. No. 116 (Rodgers Decl.) Exs. A–F. Plaintiff's counsel declares that the government served these discovery requests on the same day the Court issued its scheduling order "so that the government could timely obtain written responses and documents from claimants and third parties, such as banks which often require 90 days to comply with subpoenas for bank records, before . . . commenc[ing] claimants' depositions, and [to] avoid having to request that the court continue the discovery cut-off and other pre-trial dates set for this case." Rodgers Decl. ¶ 2. Claimant's responses to the Supplemental Rule special interrogatories were due on January 2, 2015, and responses to the other discovery requests were due on January 21, 2015.[4] Government counsel subsequently granted claimant an additional thirty days to respond to these discovery requests; nevertheless, she did not respond to them within the extended deadlines. Id. ¶ 3. By letter dated March 6, plaintiff requested a meeting of counsel on the discovery issue and argued that claimant had waived her right to object to the government's interrogatories and document requests. Id. Ex. G; see Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well

---

[4] See Supp. Rule G(6)(b); Fed. R. Civ. P. 33, 34.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | CV 08-7568-CAS (AGRx) | Date | June 22, 2015 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. $743,856.34 IN BANK FUNDS | | |

established that a failure to object to discovery requests within the time required constitutes a waiver of any objection.").

    On March 20, 2015, the Magistrate Judge assigned to this case issued an order regarding the aforementioned discovery requests. Dkt. No. 111. This order directed Patricia Clark to "answer, without objection, supplemental rule interrogatory numbers 1 through 14"; to "answer, without objection, interrogatory numbers 1 through 17"; and to "answer, without objection, and produce all documents within Patricia Clark's possession, custody or control which are responsive to document request numbers 1 through 37." Id. at 1–2. The order also directed Patricia Clerk to serve these answers and produce responsive documents "no later than April 21, 2015." Id. at 3.

    On April 21, 2015, Patricia Clark served her responses to the government's regular and Supplemental Rule interrogatories. Rogers Decl. Exs. K, L. On May 15, 2015, government counsel argued in a letter to claimant's counsel that these responses were insufficient. First, the government complained that Patricia Clark had failed to submit charts referenced in her interrogatory responses, as well as "appendixes and attachments which purportedly explain her claim to $178,518.00" of the bank funds but were not actually attached to the responses or otherwise provided to the government. Rogers Decl. Ex. J at 1–2. The government also contended that Patricia Clark had failed to fully answer several interrogatories and provide factual details supporting her contention that some of the disputed funds represented legitimate loans to Kristin Clark. Id. at 3. In briefing on this motion, the government also asserts that Patricia Clark has failed to "fully respond[] to the interrogatory which requests that she identify all of her bank accounts by account number, account holder and opening date, choosing instead to merely set forth the names of the banks in which she held those accounts (and thus making it difficult for the government to subpoena the relevant records from these financial institutions)." Dkt. No. 116 at 16 (citing Rogers Decl. ¶ 14 & Ex. P).

    On April 30, 2015, Patricia Clark served her response to the requests for production of documents. Rodgers Decl. Ex. I. As to document requests 1, and 2, claimant represented that she had produced all responsive documents. Id. at 6, 9. As to document requests 4, 6, 13, 19, 20, 21, 22, 23, 24, 25, 26, 27, and 28, claimant produced some documents, and asserted that she would "provide supplemental documents to the Government, once they are in Claimant's possession." Id. at 12–13, 14, 17, 19, 23, 26, 30, 33, 36–37, 40, 44, 44–45, 48. As to document request 3, claimant produced

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | CV 08-7568-CAS (AGRx) | Date | June 22, 2015 |
| Title | UNITED STATES OF AMERICA v. $743,856.34 IN BANK FUNDS | | |

documents, and did not state whether that production represented all available documents, or whether more would be forthcoming. Id. at 9–12. The produced documents include tax returns, property records, and bank statements. Claimant represented that she had been unable to locate responsive documents to the remainder of the requests. See generally id. In a letter dated May 5, 2015, government counsel objected that Patricia Clark had been ordered to produce all responsive documents by April 21, 2015, and not "once they are in [her] possession." Rogers Decl. Ex. J at 4.

On May 5, 2015, claimant served supplemental responses to the special interrogatories that omitted references to attached appendices, exhibits or charts. See Rogers Decl. ¶ 12 & Ex. N. The supplemental responses included the following explanation:

> The difference between the money coming into [Patricia Clark and her husband Ron's] account from Kristin [Clark's] account ($558,317.00) and the money going from our account to Kristin's account ($733,335.00) is $175,018.00. That difference is the amount that Kristin owes to the Claimant Patricia and Ron Clark. Also, there was $3,500 in Patricia's Wells Fargo account before any transfers with Kristin. That money belongs to Ron and Patricia Clark. $3,500.00 in addition to $175,018.00 is the amount Claimant states is her interest in the funds.

Rogers Decl. Ex. N at 6–7. The supplemental response also contained a chart purporting to show how the claimed portion of the seized funds could be traced to lawfully earned funds. Id. at 9–10.

On May 7, 2015, government counsel sent an additional letter to claimant's counsel, stating the government's position that the supplemental response had not rectified the previously identified deficiencies. Rogers Decl. Ex. O. This letter asserted that claimant had yet to explain in detail the factual basis for her assertion that she is entitled to $178,518 of the seized funds, and pointed to an apparent discrepancy in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | CV 08-7568-CAS (AGRx) | Date | June 22, 2015 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. $743,856.34 IN BANK FUNDS | | |

explanation she had provided.[5] Id. at 1–2. The government also contended that Patricia Clark had "not set forth what transactions . . . in [the produced] Wells Fargo bank statements have any relevance to her claim." Id. at 2. The letter concluded with a warning that the government would move to strike Patricia Clark's claim and enter a default judgment "unless the responses are properly supplemented without further delay." Id.

      Following this letter, claimant served the following supplemental discovery responses: "Verified Second Supplemental Responses to Plaintiff's First Set of Interrogatories," served on May 11, 2015, Dkt. No. 120-1 ("Hathaway Decl.") Ex. 8; "Verified Third Supplemental Responses to Plaintiff's First Set of Interrogatories," served on May 15, 2015, Hathaway Decl. Ex. 9; and "Second Supplemental Responses to Plaintiff's Special Interrogatories," served on May 11, 2015, Hathaway Decl. Ex. 10. The government, however, dismisses these supplemental responses as merely reciting boilerplate contentions that "added virtually nothing" to claimant's previous responses. Dkt. No. 121 at 18.

      In her opposition to the instant motion, Patricia Clark concedes that some of her discovery responses are "incomplete," but contends that they "are as complete as possible and have been augmented as documents became available through subpoena and from the government." Dkt. No. 120 at 7. She represents that she has produced approximately 800 pages of responsive documents,[6] and adds that her burden has been "exacerbated by the fact that the records she is seeking are now several years old" because of the stay

---

    [5]The withdrawals listed in claimant's chart total $761,877.29 (not $733,335 as Patricia Clark's interrogatory response states), so that the difference between withdrawals and deposits appears to be $203,560.29—not $175,018 as the interrogatory response suggests. Rodgers Decl. Ex. N at 9–10.

    [6]The government disputes this assertion, arguing that approximately 500 of those pages were actually produced by third party Star One Credit Union in response to a subpoena served by Patricia Clark, so that Patricia Clark herself has only produced 187 pages of documents. Dkt. No. 121 at 16–17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | CV 08-7568-CAS (AGRx) | Date | June 22, 2015 |
| Title | UNITED STATES OF AMERICA v. $743,856.34 IN BANK FUNDS | | |

imposed from 2009 to 2014.[7]  Id.  Claimant "agrees" that she has failed to provide all of the data "critical to support her assertions concerning the source of the defendant bank funds," but denies that such failure has been willful or indicative of bad faith.  Id. Patricia Clark also represents that she is "willing to stipulate to extend time to conduct depositions and/or conduct expert discovery so that [the] government will not be prejudiced by any delay."  Id. at 8.

### III. LEGAL STANDARD

If a party fails to obey a court order to provide or permit discovery, the district court may issue sanctions including "striking pleadings in whole or in part" and "rendering a default judgment against the disobedient party."  Fed. R. Civ. P. 37(b)(2)(iii), (vi).  "A court must consider the following five factors before striking a pleading or declaring default: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.' "  Hester v. Vision Airlines, Inc., 687 F.3d 1162, 1169 (9th Cir. 2012) (quoting Malone v. U.S. Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987)).  "These factors are 'not a series of conditions precedent before the judge can do anything,' but a 'way for a district judge to think about what to do.' "  In re Phenylpropanolamine (PPA) Prods. Liability Litig., 460 F.3d 1217, 1226 (9th Cir. 2006). Because the first two factors usually favor terminating sanctions and the fourth always disfavors them, " 'the two key factors are prejudice and the availability of lesser sanctions.' "  Henry v. Gill Indus., Inc., 983 F.2d 943, 948 (9th Cir. 1993) (quoting Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990)).

Additionally, " '[w]here the sanction results in default, the sanctioned party's violations must be due to the willfulness, bad faith, or fault of the party.' "  Hester, 687 F.3d at 1169 (quoting Jorgensen v. Cassiday, 320 F.3d 906, 912 (9th Cir. 2003)); see Fjelstad v. Am. Honda Motor Co., Inc., 762 F.2d 1334, 1340 (9th Cir. 1985) ("Fairness

---

[7]The government responds that the stay should have had no bearing on Patricia Clark's ability to obtain records to support her claim, since the subject bank accounts are in the name of claimant and her family members, and that claimant has had ample time to serve any subpoenas that might have been necessary.  Dkt. No. 121 at 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | CV 08-7568-CAS (AGRx) | Date | June 22, 2015 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. $743,856.34 IN BANK FUNDS | | |

demands that the severe sanction of default may not be imposed under Rule 37(b)(2) in the absence of willfulness, bad faith, or fault." (internal quotation marks and citation omitted)). "Although a default judgment sanction is a harsh penalty imposed only in extreme circumstances," the Ninth Circuit will overturn such a sanction only on a "definite and firm conviction that it was clearly outside the acceptable range of sanctions." Hester, 687 F.3d at 1169 (internal quotation marks and citation omitted).

## IV. ANALYSIS

The Court analyzes in turn the factors the Ninth Circuit applies to determine whether a pleading may be stricken or a default judgment entered, and then considers whether claimant has exhibited bad faith or willfulness.

### A. The Malone Factors

1. The Public's Interest in Expeditious Resolution of the Litigation and the Court's Need to Manage its Docket

The first two factors support the imposition of sanctions where, as here, a court order has been violated. Henry, 983 F.2d at 948; Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990). Moreover, courts in similar cases have recognized the importance of responding to interrogatories. See United States v. $4,656,085.10 in Bank Funds, No. SACV 12-0219, 2014 WL 5393858, at *5 (C.D. Cal. Sept. 15, 2014) (citing United States v. $104,250 in U.S. Currency, 947 F. Supp. 2d 560, 565 (D. Md. 2013)). Accordingly, these two factors weigh in favor of plaintiff's requested sanctions.

3. The Risk of Prejudice to the Other Party

The third factor militates in favor of sanctions "if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." Adriana, 913 F.2d at 1412. The government argues that Patricia Clark's failure to fully comply with discovery requests has made it impossible for the government to prosecute its case in compliance with the scheduling order. The government explains that its discovery requests were intended to obtain information and documents crucial to subpoenaing and taking the depositions of witnesses, including banks that often require ninety days to comply with record requests. Even if claimant were to provide satisfactory

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | CV 08-7568-CAS (AGRx) | Date | June 22, 2015 |
| Title | UNITED STATES OF AMERICA v. $743,856.34 IN BANK FUNDS | | |

discovery responses at this point, the government contends, it would be impossible for the government to complete discovery by August 10, 2015, or file any needed motions before the August 28, 2015 cutoff.  Dkt. No. 116 at 18–19.

     Nevertheless, the Court does not find any significant risk of prejudice to the moving party that cannot be cured by continuing the scheduled dates in this action, which claimant is amenable to doing.  Dkt. No. 120 at 9; compare Henry, 983 F.2d at 948 (finding prejudice where delay caused by litigant's discovery misconduct caused a key witness with a brain tumor to be unable to participate in the lawsuit's defense).  The property at issue, bank funds, is at no risk of spoiling or otherwise being irreparably harmed, and this action has already been delayed for over five years at the government's request.  Accordingly, this factor weighs against striking Patricia Clark's claim and entering a default judgment.

     4.     The Public Policy Favoring the Disposition of Cases on their Merits

     A public policy in favor of deciding cases on the merits runs throughout the Federal Rules of Civil Procedure.  Eitel v. McCool, 782 F.2d 1470.  Accordingly, as in all cases, this factor weighs against the imposition of terminating sanctions.  See Henry, 983 F.2d at 948.

     5.     The Availability of Less Drastic Sanctions

     The final factor to be considered is the availability of alternative, less severe sanctions.  See Hester, 687 F.3d at 1169.  Less drastic sanctions available under Rule 37 "include: 'a warning, a formal reprimand, placing the case at the bottom of the calendar, a fine, the imposition of costs or attorney fees, the temporary suspension of the culpable counsel from practice before the court, . . . dismissal of the suit unless new counsel is secured [,] . . . preclusion of claims or defenses, or the imposition of fees and costs upon [the recalcitrant party's] counsel.' " Malone, 833 F.2d at 132 n.1 (quoting Titus v. Mercedez Benz of N. Am., 695 F.2d 746, 749 n.6 (3d Cir. 1982)).  Relevant to consideration of this factor are the feasibility of less drastic measures and whether the Court has previously tried lesser sanctions or warned the non-moving party about the possibility of dismissal.  Valley Eng'rs, Inc. v. Elec. Eng'g Co., 158 F.3d 1051, 1057 (9th Cir. 1998).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | CV 08-7568-CAS (AGRx) | Date | June 22, 2015 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. $743,856.34 IN BANK FUNDS | | |

In this case, the Court has not previously imposed any alternative sanctions or warned about the possibility of terminating sanctions. Although the government argues that Patricia Clark's "failure to comply with the court order is indicative that the imposition . . . of a lesser sanction would be both inappropriate and ineffective," Dkt. No. 116 at 19, in the absence of a prior warning or other sanction, the Court finds that this factor counsels against the harsh penalty the government seeks. Compare Hester, 687 F.3d at 1170 (affirming imposition of terminating sanctions where the district court had "warned [the sanctioned party" on the record several times about the possibility of a case-dispositive sanction" and the court's order contained "an explicit, three-and-a-half page discussion of why less drastic sanctions were insufficient").

### B. Bad Faith or Willfulness

As discussed above, the only factors favoring the entry of terminating sanctions are those that always weigh in favor of sanctions. Especially in light of the apparent lack of incurable prejudice to the government and the lack of a prior sanction or warning by the Court, the requested sanctions therefore appear inappropriate. Nevertheless, the Court also considers whether the government has shown bad faith, willfulness, or fault on claimant's part.

'[D]isobedient conduct not shown to be outside the control of the litigant' is all that is required to demonstrate willfulness, bad faith, or fault." Henry, 983 F.2d at 949 (quoting Fjelstad, 762 F.2d at 1341). Citing this language, the government argues that Patricia Clark's "failure to cooperate in discovery could not possibly have been caused by circumstances beyond [her] control." Dkt. No. 116 at 20.

While agreeing with the government that claimant's excuses for providing admittedly incomplete discovery responses are not entirely persuasive, at this time the Court finds no clear indication of bad faith or willfulness that would justify the extreme remedy of striking claimant's answer and entering a default judgment. Patricia Clark has produced significant (albeit insufficient) discovery, and has continued to produce supplemental responses (albeit not to the government's liking). Claimant's counsel also represents that he will continue to produce discovery and provide supplemental responses. Dkt. No. 120 at 9. At least at this point, the lack of manifest bad faith or willfulness also weighs against the imposition of terminating sanctions. See Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1556 (11th Cir. 1986) ("The decision to dismiss a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | CV 08-7568-CAS (AGRx) | Date | June 22, 2015 |
| Title | UNITED STATES OF AMERICA v. $743,856.34 IN BANK FUNDS | | |

claim, like the decision to enter a default judgment, ought to be a last resort—ordered only if noncompliance with discovery orders is due to willful or bad faith disregard for those orders."). Instead, the Court concludes that the appropriate sanction is a warning that serious sanctions will follow if claimant does not produce the requested discovery within sixty days.

## V.     CONCLUSION

The government has not shown that the extreme sanctions of striking Patricia Clark's claim and answer and entering a default judgment are appropriate. For that reason, the motion is **DENIED**. Still, given claimant's admitted failure to comply with the Court's prior order regarding discovery, and her inability to satisfactorily explain such failure, the Court admonishes claimant and her counsel that failure to fully comply with the March 20, 2015 order within **sixty (60) days** of the instant order could lead to terminating and/or monetary sanctions. In accordance with this sanction, the Court hereby extends all previously scheduled dates in this action by sixty days, as follows:

- Factual Discovery Cut-off: October 13, 2015;
- Last Day to File Motions: October 30, 2015;
- Exchange of Expert Reports Cut-off: October 26, 2015;
- Exchange of Rebuttal Reports Cut-off: November 9, 2015;
- Expert Discovery Cut-off: November 23, 2015;
- Status Conference re: Settlement **(11:00 A.M.)**: **January 11, 2016**;
- Pretrial Conference/Hearing on Motions in Limine **(11:00 A.M.): January 25, 2016;**
- and Jury Trial **(9:30 A.M.): February 16, 2016.**

IT IS SO ORDERED.

| | 00 | : | 02 |
|---|---|---|---|
| | Initials of Preparer | | CMJ |